UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------×
RANDY DULNY,

              *Plaintiff*,                            **19 CV 5481**

        *v.*

                                               **COMPLAINT**

THE RABBI HASKEL LOOKSTEIN SCHOOL *a/k/a* THE
RAMAZ SCHOOL,

              *Defendant.*
------------------------------------------------------------------------×

      Plaintiff Randy Dulny, by his counsel, The Harman Firm, LLP, alleges for his Complaint against Defendant The Rabbi Haskel Lookstein School a/k/a The Ramaz school ("Ramaz") as follows:

## PRELIMINARY STATEMENT

      1.     In 1980, Ramaz hired Mr. Dulny as a Physical Education Teacher, Athletic Director, and Coach. In 1983, Rabbi Haskel Lookstein offered Mr. Dulny tenure in exchange for his continued employment, with both parties understanding that tenure meant Mr. Dulny could not be fired without cause. In 2019—almost four decades later—Rabbi Shlomo Stochel, the Head of the Upper School and Mr. Dulny's supervisor for the past few years, informed Mr. Dulny that Ramaz was not going to renew his contract, thereby terminating his employment effective August 31, 2019. Ramaz falsely accused Mr. Dulny of various transgressions, such as refusing to participate in tournaments, and forging a fake parking permit. Ramaz never confronted Mr. Dulny about these allegations, and Rabbi Stochel's only explanation for terminating Mr. Dulny's employment was that Ramaz needed "somebody with more energy"—a thinly veiled comment about Mr. Dulny's age (64).

1

2. Plaintiff seeks damages and costs against Defendant for discriminating against him based on his age (64) by not renewing his contract and terminating his employment, in violation of the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 *et seq.*

3. Plaintiff also seeks damages and costs against Defendant for breaching its contract by terminating his employment despite his tenured position, in violation of New York common Law.

## JURISDICTION, VENUE, AND ADMINISTRATIVE PREREQUISITES

4. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Plaintiff's NYCHRL and New York common Law claims, as these claims are so related to the claims within such original jurisdiction that they form part of the same case or controversy.

5. Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over Plaintiff's claims, as the matter in controversy exceeds $75,000 and is between citizens of different states:

   a. Plaintiff is a citizen of the State of New Jersey, as Mr. Dulny is domiciled in the State of New Jersey.

   b. Upon information and belief, Defendant is a citizen of the State of New York, as it is a corporation organized under the laws of the State of New York, and a citizen of the State of New York, as its headquarters are located in the State of New York.

6. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

## TRIAL BY JURY

7. Plaintiff respectfully requests a trial before a jury.

## PARTIES

8. Plaintiff, at all times relevant hereto, was and is a resident of Essex County in the State of New Jersey.

9. Upon information and belief, at all times relevant hereto, Defendant was and is an organization organized under the laws of the State of New York with its principal office located at 114 East 85th Street, New York, New York 10028.

## STATEMENT OF FACTS

**I.    Age Claim**

10. On September 1, 1980, Ramaz hired Mr. Dulny at its 60 East 78th Street, New York, New York 10021 location (the "Upper School") as a Physical Education Teacher, Athletic Director, and Coach.

11. Ramaz tasked Mr. Dulny with teaching physical education classes, hiring coaches, coordinating bus schedules, buying uniforms, scheduling athletic events, managing all athletic teams, and coaching athletic teams—responsibilities that grew as the number of teams at Ramaz increased.

12. In 2019—almost four decades later—Mr. Dulny continued to be the Athletic Director, the Coach of two school teams, a Physical Education Teacher, and the Head of the Physical Education Department.

13. On January 22, 2019, Rabbi Shlomo Stochel, the Head of the Upper School and Mr. Dulny's supervisor for the past few years, informed Mr. Dulny that Ramaz was not going to renew his contract, thereby terminating his employment effective August 31, 2019.

14. Rabbi Stochel's only explanation for terminating Mr. Dulny's employment was that Ramaz needed "somebody with more energy"—a thinly veiled comment about Mr. Dulny's age (64).

15. Lacking energy could not be a worse description of Mr. Dulny.

16. Mr. Dulny arrived to work early every day and continues to do so by getting there no later than 7:00am to work with those students who want extra practice before prayers start at 8:00 am and classes start at 8:50am; physically participated in daily lessons and team activities; and was constantly adding new responsibilities to his workload, such as teaching extra physical education classes.

17. Mr. Dulny left work and continues to leave work either when classes end at 4:45pm or when team practices or games ended, often 2 times a week between 8:00pm and 10:30pm.

18. In fact, Mr. Dulny saved two students lives in the gym by using CPR (both went on to later have heart transplants).

19. In sum, Mr. Dulny showed no signs of lacking energy.

20. Throughout his employment with Ramaz, Mr. Dulny was a dedicated employee who consistently fulfilled his job responsibilities and never received any negative evaluations, performance reviews, verbal or written warnings, write-ups, or anything of the like.

21. Indeed, Ms. Ruth Gartenberg from the Human Resources department, who was present at this meeting with Rabbi Stochel, was so visibly shocked when she heard that they wanted someone who had "more energy" than Mr. Dulny that her jaw dropped in surprise.

22. Mr. Dulny also recently received a glowing letter of recommendation from his colleague, Dr. Jay Stone, in which Dr. Stone highlights, among other positive things, Mr. Dulny's unwavering commitment and energy to his job, the students, and the school.

23. In reality, the decision to terminate Mr. Dulny was based solely on his age.

24. Further, Ramaz has a pattern and practice of terminating its older employees.

25. For example, between 2013 and 2018, Ramaz terminated Dr. Joan Warshall, a Language Teacher in her 60s; Ms. Linda Malamy, a Secretary in her 60s, replacing her with a young individual in their 30s; Ms. Caroll Goldberg, a Music Teacher in her 50s, replacing her with two younger teachers in their 30s or 40s; and Ms. Ellen Rosen, an Art Teacher and Department Head in her 60s, replacing her with a teacher in the art department in their 40s.

26. Ramaz terminated Mr. Dulny—at age 64—as it had these aforementioned employees, for its discriminatory animus towards older employees.

**II.   Breach of Contract**

27. In 1983, Rabbi Haskel Lookstein offered Mr. Dulny tenure in exchange for his continued employment.

28. Both parties understood that tenure meant that Mr. Dulny could not be fired without cause.

29. Mr. Dulny continued to work for Ramaz and included a reference to this tenure agreement in each subsequent renewal of his contract that stated, "I am signing this contract while noting that nothing contained within revokes the tenure granted to me upon the start of my fourth year of employment at Ramaz."

30. Not once did anyone from Ramaz dispute this tenure clause and they accepted his signed contract.

31.     As such, Ramaz breached their agreement by terminating him without cause.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
### Wrongful Termination in Violation of NYCHRL

32.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 31 with the same force as though separately alleged herein.

33.     The NYCHRL prohibits an employer from discriminating against an employee in compensation or in terms, conditions, and privileges of employment on the basis of age.

34.     Defendant violated the NYCHRL when it terminated Plaintiff's employment based on his age.

35.     As a direct and proximate consequence of Defendant's age discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

36.     Defendant's discriminatory treatment of Plaintiff involved a conscious disregard of Plaintiff's rights or conduct so reckless as to amount to such disregard.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

### SECOND CAUSE OF ACTION
### Breach of Contract in Violation of New York Common Law

37.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 36 with the same force as though separately alleged herein.

38.     Plaintiff and Defendant entered into a contract which contained provisions prohibiting termination of Plaintiff's tenured employment without cause.

39.     Defendant breached its contract with Plaintiff by terminating his tenured employment without cause, resulting in Plaintiff's loss of employment.

40. By reason of its breach of contract, Defendant is liable to Plaintiff for an amount to be determined at trial, plus interest.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. For the first cause of action, compensatory damages, punitive damages, attorneys' fees and costs, and any other damages to be determined at trial;

B. For the second cause of action, economic loss, and any other damages to be determined at trial, plus interest; and

C. For such other and further relief as the Court deems just and proper.

Dated: New York, New York
       June 12, 2019

By:   /s Edgar M. Rivera_____
      Edgar M. Rivera [ER-1378]
      Walker G. Harman, Jr. [WH-8044]
      THE HARMAN FIRM, LLP
      381 Park Avenue South, Suite 1220
      New York, NY 10016
      T: (212) 425-2600
      E: erivera@theharmanfirm.com
      E: wharman@theharmanfirm.com

      *Attorneys for Plaintiff*